666 P.2d 777

FIRST STATE BANK, Plaintiff-Appellee,

v.

Edward J. MUZIO, Marie L. Muzio, his wife, Defendants-Appellants,

v.

BANK OF NEW MEXICO, as Assignee of Mountain States Financial Corporation, Timothy M. Padilla and Michael Alarid, Jr., Defendants-Appellees.

No. 14301.

Supreme Court of New Mexico.

July 15, 1983.

Thomas M. Brown, Albuquerque, for defendants-appellants.

Robert R. Fuentes, Albuquerque, for plaintiff-appellee.

Modrall, Sperling, Roehl, Harris & Sisk, Zachary L. McCormick, Albuquerque, for defendant-appellee Bank of N.M.

Timothy Padilla, Michael Alarid, pro se.

## OPINION

PAYNE, Chief Justice.

This case presents the question of whether a party who has failed to raise the issues

of homestead exemption and collection priorities in a prior default judgment action may be barred from litigating these same issues in a later foreclosure action.

First State Bank brought an action against Edward Muzio seeking judgment on a $9,500.00 promissory note for which he was a guarantor. After Muzio failed to appear and defend the action, the trial court entered a default judgment against him for the amount of the note plus interest. In a subsequent foreclosure action, First State Bank obtained a creditor's lien against real property owned by Muzio and his wife. Thereafter, Muzios requested the trial court to find that they were entitled to the statutory homestead exemption and priorities for the collection of debts under the Community Property Act, N.M.S.A.1978, Sections 40–3–6 through 40–3–17. The trial court found that those issues were res judicata on the ground that they were not raised in the prior default judgment action. Additionally, the trial court found that any right to raise those issues was waived by Muzios under the terms of the guaranty agreement. The trial court, therefore, entered judgment of foreclosure against Muzios. Muzios now appeal this judgment.

## I.

■ In New Mexico, a foreclosure on community real property based on a judgment entered solely against one spouse should not affect the community interest of the other spouse. *See* N.M.S.A.1978, § 40–3–13. In the instant case, the husband's signature on the guaranty can do no more than commit his separate property and his share of the community property to satisfy the judgment because he is without power to encumber the community real property absent his wife's joinder. *Matter of Estate of Shadden,* 93 N.M. 274, 599 P.2d 1071 (Ct.App.1979), *cert. denied,* 93 N.M. 172, 598 P.2d 215 (1979). However, in this case, the guaranty signed only by the husband attempts to encumber the entire community estate. The contract provides in paragraph nine (9) that:

Any married person who signs this Guaranty hereby does so as an individual and *as a person exercising his or her right to manage, control, dispose of and encumber the entire community estate of the husband and wife of which said person may be one of the spouses, whether the person be a Borrower, the spouse of a Borrower, the spouse of a Guarantor, one of the Guarantors, a third party, or any combination thereof.* Any execution or other legal process that may issue shall and may be satisfied from any separate property, community property, property held in joint tenancy, property held as tenants-in-common, or in any other manner, whether of equal or unequal interest, in which any Guarantor or his or her spouse have an interest, *without regard to any priority or exemption.* Any reference to property includes real property, personal property, and both. [Emphasis added.]

Although the plain language of the guaranty urges us to conclude that the husband, by signing the guaranty, encumbered the entire community estate, we cannot agree. This type of contract clause violates long-standing New Mexico law. *Arnett v. Reade,* 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477 (1911) (applying New Mexico law); *Matter of Estate of Shadden, supra; Stroope v. Potter,* 48 N.M. 404, 151 P.2d 748 (1944); *Davidson v. Click,* 31 N.M. 543, 249 P. 100 (1926); *Adams v. Blumenshine,* 27 N.M. 643, 204 P. 66 (1922). Additionally, Section 40–3–13 specifically requires both spouses to join if the entire community real property is to be encumbered.

## II.

■ Next, we consider the issue whether Muzios expressly waived any claim they had to argue the questions of homestead exemption and collection priorities. The guaranty provides in paragraph ten (10) that:

The Guarantors hereby waive any claim of exemption or priority and consent that any subsequent execution for the indebtedness may be satisfied without limitation or exclusion by any exemption or priority. . . .

We have previously recognized the right of a surety to waive his defenses under a guaranty agreement. *American Bank of Commerce v. Covolo,* 88 N.M. 405, 540 P.2d 1294 (1975). We have also held, with respect to interpreting these types of contracts, that we are bound by the specific provisions in the contract.

In construing these contracts, we are guided by the principle that a guarantor or surety is entitled to a strict construction of his undertaking, and his liability is not to be extended by implication beyond the express terms of the contract or its plain intent. [Citation omitted.]

*Id.* at 409, 540 P.2d 1298. Likewise, we hold that the specific terms of the guaranty contract control the rights of the parties in the instant case. In this case, the husband chose to expressly waive the benefit of his exemption when he signed the guaranty. Clearly, this waiver was an integral part of the credit which was extended, and we are thus reluctant to impair arms-length contractual obligations and allow him to violate his guaranty contract. We have held that citizens have the right to make their contracts in their own way. *Rubalcava v. Garst,* 53 N.M. 295, 206 P.2d 1154 (1949). Like other jurisdictions, we characterize these types of defenses as benefits or rights, which may be waived at the surety's discretion. *In Re Gunzberger,* 268 F. 673 (M.D.Pa.1920); *In Re Moore,* 112 F. 289 (M.D.Ala.1901); *Wright v. Wright,* 103 F. 580 (W.D.Pa.1900). We emphasize, however, that our holding on this issue is specifically limited to the husband in that his signature, and not his wife's, appears on the guaranty contract. Thus, we hold that upon execution of the guaranty, the husband encumbered only his share of the community real property, and waived his right to argue the issues of exemption and priority.

### III.

Even if the husband had not expressly waived his right to raise the questions of exemption and priority, he would be barred by the doctrine of res judicata from litigating these questions which he failed to raise in a prior proceeding with the same party. Although both the trial court and parties on appeal appear at times to use the terms collateral estoppel and res judicata synonymously, the facts of the instant case require application of the doctrine of res judicata. We view the questions of exemption and priority as integral components of the guaranty cause of action pled in the original complaint. *Compare Raven v. Marsh,* 94 N.M. 116, 607 P.2d 654 (Ct.App. 1980). Because these questions are portions of the same cause of action dealt with in the default judgment action, and are not new, unlitigated issues, they should be governed by the doctrine of res judicata, not by collateral estoppel. *Torres v. Village of Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978); *City of Santa Fe v. Velarde,* 90 N.M. 444, 564 P.2d 1326 (1977).

For res judicata to apply, the traditional rule is that the second suit must have the following relationship to the first suit:

1. The *parties* must be the same or in privity;
2. The *cause of action* must be the same;
3. There must have been a *final decision* in the first suit;
4. The first decision must have been *on the merits.*

*Torres v. Village of Capitan, supra; City of Santa Fe v. Velarde, supra; Adams v. Cox,* 55 N.M. 444, 234 P.2d 1043 (1951).

On June 4, 1980, a default judgment was entered against the husband based on a personal guaranty of a promissory note which attempted to encumber the entire community estate. On appeal, Muzios attempt to re-litigate the validity of the homestead and priority claims which were specific clauses within the original guaranty contract. Muzios argue that although the homestead and priority claims were incorporated into the guaranty, they were not issues decided in the default judgment. We disagree. We find it significant that the husband was properly notified of his opportunity to attack the validity of the guaranty and its related questions of exemptions and priority at trial. However, he chose

not to defend and judgment was entered as a judgment on the merits. *See McKee v. United Salt Corp.,* 96 N.M. 382, 630 P.2d 1237 (Ct.App.1980). As to whether a default judgment is conclusive on matters which might have been litigated in the action in which default was entered, we recognize that not all courts are in agreement. *See, e.g., Hambly v. Aetna Cas. & Sur. Co.,* 51 A.D.2d 567, 378 N.Y.S.2d 632 (1976); *Central State Bank v. Hudik-Ross Co., Inc.,* 164 N.J.Super. 317, 396 A.2d 347 (1978); *Royal Coachman Color Guard v. Marine Trading,* 398 A.2d 382 (Me.1979); *Mitchell v. Chastain Finance Co.,* 141 Ga.App. 512, 233 S.E.2d 829 (1977). Some courts see this issue as one which turns upon whether there is an identity of causes of action in the two cases. *Lynch v. Lynch,* 250 Iowa 407, 94 N.W.2d 105 (1959). However, other courts have held that the doctrine of res judicata applies to issues which were not specifically raised, but which could properly have been considered and determined in the prior action. *In Re Nicholas' Estate,* 144 W.Va. 116, 107 S.E.2d 53 (1959); *A.B.C. Truck Lines v. Kenemer,* 247 Ala. 543, 25 So.2d 511 (1946); *Barrow v. Santa Monica Builders Supply Co.,* 9 Cal.2d 601, 71 P.2d 1108 (1937); *Tingwall v. King Hill Irr. Dist.,* 66 Idaho 76, 155 P.2d 605 (1945). We find the rule enunciated in this second line of cases to be better reasoned and more applicable to the facts of the instant case.

■ We adopt the well-settled rule of law expressed in other jurisdictions which states that a prior default judgment bars a subsequent suit on issues which were, or could have been, determined in the earlier action. *Hambly v. Aetna Cas. & Sur. Co., supra; Mitchell v. Insurance Co. of North America,* 40 A.D.2d 873, 338 N.Y.S.2d 92 (1972); *Mitchell v. Chastain Finance Co., supra.* We recognize that this rule is based on three long-standing and well-reasoned principles of public policy. First, public policy favors an end to litigation. The New Mexico Court of Appeals discussed this principle in *Royal Intern. Optical v. Texas State Optical,* 92 N.M. 237, 586 P.2d 318 (Ct.App.1978), *cert. denied,* 92 N.M. 260, 586 P.2d 1089 (1978):

It has long been the rule that a final judgment is conclusive as to a claim in controversy between the parties as to every matter which was offered to sustain or defeat the claim. '*Public policy requires that there be an end to litigation and that rights once established by final judgment shall not again be litigated in any subsequent proceeding.*' [Emphasis added.] [Citations omitted.] This rule of law has been consistently followed. *Board of County Com'rs of Quay County v. Wasson,* 37 N.M. 503, 24 P.2d 1098 (1933); *Miller v. Miller,* 83 N.M. 230, 490 P.2d 672 (1971).

*Id.* at 243, 586 P.2d at 324. Second, public policy favors judicial economy and thus forbids a defendant to split up his defenses in order to present them in a piecemeal fashion.

*A party cannot by negligence or design withhold issues and litigate them in consecutive actions.* [Citations omitted.] He may not split his demands or his defenses. [Citations omitted.] *Equity will not deal with a case by piecemeal.* [Emphasis added.] [Citations omitted.]

*Brunswig Drug Co. v. Springer,* 55 Cal. App.2d 444 at 447, 130 P.2d 758 at 761 (1942). Third, where a party has an opportunity to present his defense and neglects to do so, public policy requires that he take the consequences of his negligence.

'The defendant in an action is ordinarily required to set up all his defenses which do not constitute separate causes of action, and if he neglects to do so is concluded by the judgment rendered in such action. *The judgment operates as res judicata, not only in regard to the existence of the plaintiff's cause of action, but as to the nonexistence of the defense which was not pleaded. The reason for this rule lies in the principle that there must be an end to litigation, and, where a party has an opportunity to present his defense and neglects to do so, the demands of the law require that he should take the consequences.*' [Emphasis added.]

*Price v. Sixth Dist. Agricultural Ass'n,* 201 Cal. 502 at 506, 258 P. 387 at 391 (1927). Thus, based on the previously cited opinions and substantial public policy, we hold that a default judgment bars a subsequent suit on issues which were, or could have been determined in that default judgment action.

We note, however, that because wife's signature does not appear on the guaranty contract, she cannot be barred by the doctrine of res judicata from litigating the questions as they relate to her own interests.

### IV.

 Finally, the husband argues that the judgment debt against him, as guarantor, be reduced pro-rata with the judgment debt of George Dermksian, the borrower. Specifically, the husband contends that payments of $9,806.68 and $34,169.71 received in partial satisfaction of Dermksian's judgment should reduce pro-rata his judgment debt to First State Bank. In our view, this argument is contrary to the express terms of the guaranty. Paragraph three (3) of the guaranty contract specifically provides:

> The obligations hereunder are joint and several, and independent of the obligations of Borrowers, and a separate action or actions may be brought and prosecuted against Guarantors, or any one of them, whether or not an action is brought against Borrowers or whether or not Borrowers be joined in any such action or actions....

Thus, upon execution of the guaranty, the husband agreed to pay a specific sum to First State Bank, regardless of the obligations of Dermksian. The husband admits there is no New Mexico authority for his contention that his judgment debt should be reduced pro rata with the judgment debt of Dermksian. Instead, he urges this Court to consider principles of equity to reach the result he seeks. We reject this approach. To agree with the husband's contention would require this Court to ignore the plain and express language of the guaranty contract. Thus, we affirm the trial court's finding that the husband's debt should not be reduced pro-rata with the debt of Dermksian.

### V.

Accordingly, the judgment of the trial court is affirmed as to the husband only, and the case remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.