1999-NMSC-030

986 P.2d 1117

**In the Matter of Robert RICHARDS, Esquire.**

No. 24,472.

Supreme Court of New Mexico.

July 26, 1999.

Sally Scott–Mullins, Deputy Chief Disciplinary Counsel, Albuquerque, New Mexico.

Robert Richards, Santa Fe, New Mexico, for Disciplinary Board.

## *OPINION*

PER CURIAM.

{1} Pursuant to the Rules Governing Discipline, 17–101 to –316 NMRA 1999, this matter came before this Court for consideration of the disciplinary board's findings; conclusions, and recommendations for discipline. The disciplinary proceeding which is the subject of this appeal involves two frivolous claims that Robert Richards ("Respondent") filed.[1] The disciplinary board found that Respondent's conduct resulted in the violation of Rule 16–301, which prohibits the assertion of frivolous claims, and several other provisions of the Rules of Professional Conduct Rules, Rule 16–101 to –805 NMRA 1999. For the reasons set forth below, the Court adopts the Board's findings, conclusions and recommendations for discipline, as modified.

## I.

{2} In October 1996, GE Capital Mortgage Services, Inc. ("GE") filed a foreclosure action against Diane Peterson, ("Peterson") after the note it secured had become delinquent. Respondent filed an answer for Peterson that admitted the delinquency, but asserted a counterclaim based upon a federal claim of common law lien. Peterson, as the owner of the property, claimed an attachment under a federal common law lien writ of attachment on real and personal property in the amount of $59,000. The counterclaim Respondent filed in the foreclosure action asserted that the common-law lien was paramount and superior to GE's mortgage.

## II.

{3} Count I of the disciplinary charges brought against Respondent alleged that the filing of the counterclaim violated Rule 16–101 (requiring that attorneys are competent), 16–301 (requiring that attorneys only present meritorious claims and contentions), Rule 16–804(D) (prohibiting attorneys

from engaging in conduct prejudicial to the administration of justice), and Rule 16–804(H) (prohibiting attorneys from engaging in conduct that reflects adversely on their fitness to practice law). The hearing committee and the board found that the evidence supported Count I. We agree.

## A.

{4} A common-law lien is the right of one person to retain possession of something *belonging to another* until certain demands of the person in possession are satisfied. *See Bell v. Dennis,* 43 N.M. 350, 354, 93 P.2d 1003, 1005 (1939); *Skip Kirchdorfer, Inc., v. U.S.,* 6 F.3d 1573 (1993). The corollary of this rule is that a property owner generally cannot have a lien on his or her own property. Although there are narrow exceptions to this general rule, they are inapplicable here. The "common law lien" advanced by Respondent does not come within the ambit of Rule 16–301 that a legal position is not frivolous if it states a good faith basis for the extension, modification, or reversal of existing law.

{5} Respondent first misplaces his reliance on *Gould v. Day,* 94 U.S. 405, 24 L.Ed. 232 (1876), a United States Supreme Court case which involved a land fraud scheme in which Gould, using a power of attorney from one of Day's predecessors in title, sold property and timber rights to land he knew belonged to Day. Because of an unrecorded deed in Day's chain of title, certain buyers from Gould were good faith purchasers without notice. Part of Gould's defense to the suit for damages was that Day, after obtaining deeds to the land, purchased the state's tax sale bids for the same property. Day's purchase of the bids occurred during the redemption period and Day received quit claim deeds from the State. According to Gould, Day's actions resulted in the initiation of a new chain of title for Day, paramount to the title claimed by the good faith purchasers. In effect, Gould defended himself against Day's claims by asserting that other

---

**1.** The hearing committee also found that the evidence failed to support the third count in the disciplinary charges, that Respondent failed to

cooperate with disciplinary counsel. However, no appeal was taken from this finding and it plays no part in the discipline we impose.

parties, not Day, had been harmed by his fraud.

{6} The Supreme Court held that Day's purchase of the bids simply united in Day, the ownership of the state's tax lien and the title to the lands, merging the lesser title into the greater and former. The Court stated:

> One cannot have a lien upon his own property, except where equity interposes, and, to prevent a failure of justice, keeps the lien outstanding; and here there was no interference of equity, and no occasion for its interference.

*Id.* at 413.

{7} Respondent argued this language provided a good faith basis for his claim that Peterson could assert a lien on her own property for the amount of her equity. He argued that the purpose of the lien was to insure that the property was sold for fair market value to allow Peterson to receive her equity in the property. Respondent contended that the recognition of her lien would prevent a failure of justice by insuring that both his client and GE would receive all monies to which they were entitled. Thus, he contended that this was a good faith argument for an exception to the general rule that one cannot have a lien on his or her own property. We disagree.

{8} The "common law lien" noted in *Gould* applies when a person attempts to preserve title to his [or her] property by acquiring another person's lien against the property. In that situation, the owner's intention for the lien to merge or not merge in his title will be honored. The owner simply will not be placed in a worse position for having acquired an outstanding lien for the purpose of protecting his title. *See Federal Land Bank v. Boese,* 373 N.W.2d 118, 121 (Iowa 1985). Thus, the "common law lien" as discussed in *Gould* does not actually create a "lien", nor does *Gould* stand for the proposition that an owner's equity can be a lien, let alone a lien superior to the rights of a record mortgage holder.

{9} Respondent would have been aware of the extremely limited parameters of the exception to the general rule that a property owner cannot have a lien on his own property had he further researched the *Gould* case and read the cases distinguishing it. Indeed, had he done so, he would have found cases very similar to the Peterson foreclosure where the exception had been found inapplicable. *See Boese* 373 N.W.2d at 121 (where the court, although recognizing the essential elements of a common-law lien, held that "a property owner cannot claim a lien on his own real estate because an owner cannot owe himself a debt" after a farmer claimed a common-law lien on his own property for the value of the labor and material he had expended on the farm when bank filed a foreclosure suit).

{10} Respondent's reliance on another United States Supreme Court case also is misplaced. While testifying before the hearing committee, Respondent proclaimed his reliance on *Rich v. Braxton,* 158 U.S. 375, 15 S.Ct. 1006, 39 L.Ed. 1022 (1895), stating that Peterson's equity was a federal lien because it was based upon *Rich.* He stated that *Rich* stood for the proposition that federal law, not state law, controlled if a federal lien is involved, and that federal liens, once filed, can only be removed by a federal court of equity upon a showing of facial invalidity of the lien. We are unpersuaded by Respondent's argument.

{11} *Rich* did not involve a federal lien or claim but rather the interpretation of a West Virginia tax deed and redemption statute. It did not hold nor suggest that state law did not apply. On the contrary, the court looked first for a West Virginia decision construing the statutes in question. *See id.* at 407, 15 S.Ct. 1006. Addressing the issue of whether the bill in equity that the plaintiffs filed could provide the relief requested, the Court reiterated the general rule that equity will not interfere to remove a cloud on title where the instrument is void on its face because the remedy in that circumstance is at law. *Id.* at 407, 15 S.Ct. 1006.

{12} Not only do these cases fail to provide a legal basis for the counterclaim Respondent filed, but they provide no basis for a "good faith argument for an extension, modification or reversal of existing law." Although Rule 16–301 recognizes that the law is not static, and that "account must be taken

of the law's ambiguities and potential for change" a case upon which a lawyer relies to argue for the extension, modification, or reversal of existing law, must say what the lawyer says it says. Moreover, when relying upon an exception to a general rule of law, the position the lawyer asserts must either come within the exception, or provide a cogent argument for broadening the exception. We agree with the Board's conclusion that respondent has not provided a "good faith argument for an extension, modification or reversal of existing law" and thus has violated Rule 16–301.

### B.

{13} Respondent's "common law lien" was also precluded by representations made in the mortgage. *See Ortega, Snead, Dixon & Hanna v. Gennitti,* 93 N.M. 135, 141, 597 P.2d 745, 751 (1979). The mortgage Peterson granted to GE contained the covenant, customary in such instruments, that the property was unencumbered except for encumbrances of record at the time of execution, and that Peterson promptly would discharge any lien superior to GE's mortgage. The law does not permit a party to subsequently assert positions contrary to representations made in a mortgage, deed, or similar instrument. *See id.* Thus, Peterson was prohibited from subsequently claiming that her lien was superior to GE's mortgage.

### III.

{14} Count II of the disciplinary charges alleged that filing a magistrate court suit against GE's attorneys violated Rules 16–301 (meritorious claims and contentions), 16–804(D) (engaging in conduct prejudicial to the administration of justice), and 16–804(H) (engaging in conduct that reflects adversely on the fitness to practice law) and was barred by principles of res judicata and collateral estoppel.

{15} The terms of the note and mortgage obligated Peterson to pay GE's "reasonable attorney's fees" in the event of a default. After Peterson defaulted, Respondent requested and received information from the attorney for GE about the amount of the fees. Respondent then wrote to the GE's attorney, objecting to the amount of the fees. GE's attorney stated in a letter that because of Respondent's "novel" counterclaim, the attorneys' fees Peterson was required to pay were higher than they otherwise would have been. The letter also furnished a stipulation of dismissal with prejudice to Respondent and asked that he execute them and return them for filing. Without any further objection to the amount of the fees and without bringing the issue of the reasonableness of the fees to the court's attention, Respondent signed the dismissal pleadings and returned them to GE's counsel. Respondent also had, even before the foreclosure case was dismissed, entered into a second legal services contract with Peterson to file, under a contingent fee arrangement, a suit against GE's attorneys for a refund of the attorney's fees for which Peterson had reimbursed GE from the sale proceeds.

{16} After the foreclosure case was dismissed, Respondent filed an action in Magistrate Court, on behalf of Peterson against GE's attorneys, on the grounds that Defendants overcharged Plaintiff for attorney's fees and costs in a foreclosure. Attorneys for GE filed an answer and motion to dismiss, asserting that there was no factual or legal basis for the Magistrate Court proceeding against the attorneys and that any objection Peterson had to the amount of the attorney's fees should have been raised in the foreclosure proceeding prior to its dismissal. Respondent then filed an amended complaint, adding GE as a defendant, to which GE filed a second motion to dismiss. The Magistrate Court judge granted the motions to dismiss. No appeal was taken from that decision.

{17} Respondent argued that Peterson could still sue the GE attorneys in a subsequent proceeding as a third party beneficiary under the mortgage despite our holding in *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.,* 106 N.M. 757, 761, 750 P.2d 118, 124 (1988), that an attorney owes no legal duty to a non-client. Respondent argued that *Leyba v. Whitley,* 120 N.M. 768, 907 P.2d 172 (1995), modified *Garcia* to the extent that an attorney *does* have a duty to a non-client if that non-client is a known third party benefi-

ciary. Although Respondent may make reasonable argument, we nonetheless concur with the Board's conclusion that despite the holdings of *Garcia* and *Leyba*, "a lawyer of ordinary competence would recognize [that] the well-established doctrines of collateral estoppel and res judicata would bar the magistrate [court] proceeding."

{18} Respondent argues that the doctrines of collateral estoppel and res judicata did not apply because the parties and the cause of action in the Magistrate Court were different. The parties were different, he argues, because the attorneys for GE, not GE itself, were sued. The cause of action was different, Respondent claimed, because the issue in the foreclosure suit was reasonable attorney's fees, while the issue in the Magistrate Court suit was unreasonable attorney's fees. We disagree.

{19} The principles of res judicata apply not only to parties, but also to those in privity with them. *See First State Bank v. Muzio*, 100 N.M. 98, 100, 666 P.2d 777, 779 (1983). Moreover, the law in New Mexico is clear that a party may not withhold issues and litigate them in subsequent proceedings, and may not split his demands or his defenses. *See id.* at 101, 666 P.2d at 780. It is equally clear that this rule applies to "issues which were, or could have been, determined in the [first] action." *Id.* The issue of the reasonableness of GE's attorney's fees had to be raised in the foreclosure suit. By signing the stipulation for dismissal without bringing his objections before the court, Respondent cost his client the opportunity to obtain a judicial determination of the reasonableness of GE's attorney's fees. Respondent failed to present any good faith argument for the modification or reversal of these basic principles of judicial economy before the Magistrate Court or the disciplinary board's hearing committee. Thus, by filing this claim, Respondent again violated Rules 16–101, 16–301, 16–804(D), and 16–804(H).

IV.

{20} Finally, we consider the presence of certain aggravating factors. Respondent has a prior disciplinary record, having been publicly censured in 1997 for making a material misrepresentation of fact to the New Mexico Court of Appeals. *See In re Richards*, 1997–NMSC–035, 123 N.M. 579, 943 P.2d 1032. Respondent has refused to acknowledge the wrongful nature of his conduct. Both are factors that may justify an increase in the degree of discipline to be imposed. *See ABA Standards for Imposing Lawyer Sanctions* (1991).

V.

{21} NOW, THEREFORE, IT IS ORDERED that Robert Richards hereby is SUSPENDED from the practice of law for a period of one year pursuant to Rule 17–206(A)(3) NMRA 1999;

{22} IT IS FURTHER ORDERED that the last six months of the period of suspension shall be deferred upon the following terms and conditions:

(1) Respondent shall observe all Rules of Professional Conduct and Rules Governing Discipline during the period of actual and deferred suspension;

(2) Respondent shall pay the costs of this action in the amount of $1,704.98 on or before August 30, 1999, and any balance remaining thereafter shall bear interest at a rate of fifteen percent (15%) per annum; and

(3) Respondent shall successfully take and complete the Multistate Professional Responsibility Examination.

{23} IT IS FURTHER ORDERED that during the deferred suspension period and for an additional six (6) months Respondent shall work under the supervision of a supervising attorney for a total period of not less than twelve (12) months. The supervising attorney shall be appointed by the office of disciplinary counsel. Respondent shall meet with his supervising attorney each time the supervisor requires him to do so, at least on a monthly basis, during the twelve-month period of supervision;

{24} IT IS FURTHER ORDERED that Respondent shall pay the supervisor at an hourly rate, plus gross receipts tax, at an amount to be determined by the supervisor and Respondent;

{25} IT IS FURTHER ORDERED that the deferral of suspension shall be automatically revoked and Respondent shall be suspended from the practice of law for the remainder of the suspension period if any term or condition specified herein is not met. Conduct that would result in a revocation of the deferred suspension period includes, but is not limited to, failure to meet monthly with the supervisor, failure to cooperate with the supervisor, failure to successfully complete the Multistate Professional Responsibility Examination, failure to pay the costs of these proceedings; and

{26} IT IS FURTHER ORDERED that said costs shall be reduced to a transcript of judgment.

{27} IT IS SO ORDERED.

