2005-NMCA-103

118 P.3d 732

**Stephen MOFFAT, Plaintiff–Appellant,**

v.

**James A. BRANCH, Jr., Joseph J. Branney, and Elizabeth Vincoy, individually and as mother and next friend of Vernon Vincoy, Defendants–Appellees.**

No. 24,307.

Court of Appeals of New Mexico.

May 18, 2005.

Certiorari Granted, No. 29,275, Aug. 5, 2005.

William G. Gilstrap, William G. Gilstrap, P.C., Albuquerque, NM, for Appellant.

Ray M. Vargas, II, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, NM, for Appellees.

*OPINION*

FRY, Judge.

{1} This case continues a controversy over attorney fees generated from a medical malpractice settlement. *See Moffat v. Branch,* 2002–NMCA–067, 132 N.M. 412, 49 P.3d 673 [hereinafter *Moffat I* ]. Attorney Stephen Moffat asserts that he should be allowed to pursue claims in state court against attorneys Branch and Branney, who procured the settlement for Elizabeth Vincoy, Moffat's former client. The district court granted summary judgment to Branch and Branney, concluding that Moffat's claims were barred by the doctrine of res judicata (claim preclusion) due to a prior federal court judgment rejecting Moffat's attorney charging lien. In light of claim preclusion principles, we conclude that Moffat's current claim is the "same claim" as the one decided by the federal court, that he had a full and fair opportunity to litigate his claim in federal court, and that he is barred from asserting this claim again. We therefore affirm the district court be-

cause "[c]ourts are committed to providing every litigant a full and fair opportunity to sue or defend[, b]ut once a judgment is rendered after such an opportunity, justice requires that there be an end to the litigation." *Ford v. N.M. Dep't of Pub. Safety,* 119 N.M. 405, 409, 891 P.2d 546, 550 (Ct.App.1994).

**BACKGROUND**

{2} Moffat initially represented the plaintiffs in the medical malpractice action, but was replaced by successor counsel Branch and Branney. Branch and Branney filed a Federal Tort Claims Act (FTCA) lawsuit in federal court and procured a settlement of $4.8 million for Vincoy. Moffat filed an attorney charging lien in federal court seeking a portion of the attorney fees from the settlement.

{3} The federal court ruled that Moffat's attorney charging lien failed as a matter of law in light of New Mexico charging lien law. *Vincoy v. United States,* No. CIV. 97–296 JC/LFG, 1999 WL 1581414, at *2 (order) (D.N.M. Dec. 6, 1999). Moffat did not pursue any claims for quantum meruit, unjust enrichment, third-party beneficiary or promissory estoppel in federal court, and the federal magistrate noted that "[t]he issue of other remedies, if any, is not before the Court." *Id.*

{4} Moffat then sued Branch and Branney and his former client in state court for a portion of the attorney fees under unspecified theories of recovery. The district court indicated, by letter decision, its intention to grant motions to dismiss in favor of all defendants for failure to state a claim. Moffat then attempted to amend his complaint, and the district court denied Moffat the right to amend his complaint because it had already issued its letter ruling to the parties. Moffat's amended complaint stated claims for unjust enrichment, quantum meruit, third-party beneficiary, and promissory estoppel against Branch and Branney as well as Vincoy.

{5} Moffat appealed to this Court and we ruled in *Moffat I* that the district court should have allowed Moffat to amend his complaint, as of right, under the Rules of Civil Procedure. 2002–NMCA–067, ¶ 30, 132

N.M. 412, 49 P.3d 673. We also held, as against Vincoy, that both the original and amended complaints failed to state a claim for which relief could be granted. *Id.* ¶¶ 32–33. As to Branch and Branney, we affirmed dismissal of the original complaint but concluded that the district court, and not this Court, should address the merits of the amended complaint because Branch and Branney had not filed a motion to dismiss the amended complaint. *Id.* ¶¶ 30, 35. We expressly limited our ruling "to the procedural right to amend." *Id.* ¶ 30.

{6} On remand, Moffat pursued his amended complaint against Branch and Branney on contract-related theories. The district court granted summary judgment to Branch and Branney on the basis of claim preclusion, concluding that Moffat was attempting to relitigate the same claim he had asserted in federal court, using different theories. Moffat appeals, contending that: (1) our opinion in *Moffat I* prevented the district court from ruling that claim preclusion barred his claims, and (2) the federal action did not bar his contract-related claims in state court.

**DISCUSSION**

*Law of the Case*

{7} Moffat contends that, in *Moffat I*, this Court concluded that res judicata "did not apply to the other claims [of] promissory estoppel, for example, that were raised in the [a]mended [c]omplaint" and that we effectively mandated that the district court consider the substantive bases of his claims. He argues that we explicitly determined that res judicata barred only a second claim for a charging lien, not his contract-related claims, and that the law of the case doctrine bars the district court from considering claim preclusion. *See Van Orman v. Nelson*, 80 N.M. 119, 120, 452 P.2d 188, 189 (1969) (stating that an appellate opinion establishes the law of the case upon remand).

{8} Moffat misunderstands what we decided in *Moffat I*. In *Moffat I*, we concluded that his *original* complaint was "no more than an attempt to relitigate" the very same charging lien that had been rejected by the federal court. 2002–NMCA–067, ¶ 19, 132 N.M. 412, 49 P.3d 673. After ruling that

Moffat had a procedural right to amend his complaint, we then explicitly declined to review the substantive bases of the *amended* complaint as to Branch and Branney because doing so "would usurp the function of the district court with respect to matters it did not address." *Id.* ¶ 29. The district court in *Moffat I* granted Vincoy's motion to dismiss the amended complaint and we affirmed that decision. *Id.* ¶¶ 2, 33. However, Branch and Branney had not yet filed a motion to dismiss the amended complaint. *Id.* ¶ 29. We remanded for the district court to pass upon the substance of the amended complaint as to Branch and Branney. *Id.* ¶¶ 29–30. Our role as an appellate court limits our review to those matters decided by the district court; therefore, we had no authority to decide whether Moffat's amended complaint should prevail or whether Branch and Branney had affirmative defenses, including claim preclusion. *See Campos Enters., Inc. v. Edwin K. Williams & Co.*, 1998–NMCA–131, ¶ 12, 125 N.M. 691, 964 P.2d 855 (stating that this Court is a court of review and cannot review allegations not before the district court); *see also Campos de Suenos, Ltd. v. County of Bernalillo*, 2001–NMCA–043, ¶ 16, 130 N.M. 563, 28 P.3d 1104 (explaining that this Court typically reviews an affirmative defense only on appeal after a district court decides whether it was proved on the merits). It was for the district court to evaluate the merits of the amended complaint as well as Branch's and Branney's affirmative defense in the first instance.

{9} Contrary to Moffat's assertions, we did not conclude that Moffat's contract-related claims were free and clear of any claim preclusion defense. Therefore, law of the case principles are inapplicable to Moffat's amended complaint and the district court was free to consider the viability of Moffat's amended complaint as well as any affirmative defenses raised by Branch and Branney.

*Claim Preclusion*

{10} We review de novo a district court's application of claim preclusion. *Anaya v. City of Albuquerque*, 1996–NMCA–092, ¶ 5, 122 N.M. 326, 924 P.2d 735. Defendants have the burden of showing all the elements

of claim preclusion. *Id.* The essence of the claim preclusion doctrine is that "litigants are encouraged and afforded a full and fair opportunity to raise issues that exist between them in a single action [ ] [but t]here are consequences for the failure to take advantage of this opportunity." *Moffat I,* 2002–NMCA–067, ¶ 26, 132 N.M. 412, 49 P.3d 673 (citation omitted). Thus, "a litigant is ordinarily not entitled to more than one fair bite at the apple[,]" *Ford,* 119 N.M. at 407, 891 P.2d at 548, and some writers liken the doctrine to a "common-law rule of compulsory joinder" that requires a plaintiff to raise any and all legal theories in a single lawsuit. Robert C. Casad & Kevin M. Clermont, *Res Judicata: A Handbook on Its Theory, Doctrine, and Practice* 61 (2001).

{11} Four elements must be met for claim preclusion to bar a claim. The two actions (1) must involve the same parties or their privies, (2) who are acting in the same capacity or character, (3) regarding the same subject matter, and (4) must involve the same claim. *See Myers v. Olson,* 100 N.M. 745, 747, 676 P.2d 822, 824 (1984). Moffat contends that his state court action involves neither the same parties nor the same claim as the federal action. Because the prior action was in federal court, federal law determines the preclusive effect of a federal judgment. *Ford,* 119 N.M. at 409, 891 P.2d at 550 (holding that a federal court claim triggers claim preclusion in state court and that federal law then determines the preclusive effect); *see also Wolford v. Lasater,* 1999–NMCA–024, ¶ 16, 126 N.M. 614, 973 P.2d 866 (holding that a federal court judgment barred state action claims); *see also Restatement (Second) of Judgments* § 87 (1982) (stating that "[f]ederal law determines the effects under the rules of res judicata of a judgment of a federal court"). Federal law and New Mexico law are not divergent on claim preclusion doctrine, and both find the *Restatement (Second) of Judgments* (1982) [hereinafter *Restatement*], persuasive. *Ford,* 119 N.M. at 413, 891 P.2d at 554. Because of this lack of divergence, we rely more extensively on New Mexico law for convenience in this opinion.

{12} Before addressing the specific elements of claim preclusion, we must first determine whether Moffat could have raised his contract-related theories in the federal action, because claim preclusion generally will not bar a second action when the litigant could not have raised certain theories or sought certain relief in the first proceeding due to a lack of personal or subject matter jurisdiction. *See Bank of Santa Fe v. Marcy Plaza Assocs.,* 2002–NMCA–014, ¶ 14, 131 N.M. 537, 40 P.3d 442 (stating that claim preclusion applies only when plaintiff has had a "full and fair" opportunity to litigate issues in prior action and that limitations on subject matter jurisdiction in the first action may prevent such an opportunity); *Chavez v. City of Albuquerque,* 1998–NMCA–004, ¶¶ 12–13, 124 N.M. 479, 952 P.2d 474 (holding that a ruling by a city personnel board did not trigger claim preclusion because it had no jurisdiction to consider all of plaintiff's claims); *Ford,* 119 N.M. at 410, 891 P.2d at 551 (stating that "a plaintiff should be permitted to litigate in the second action a ground that the plaintiff did not have an opportunity to assert in the first litigation"); *see also Restatement* § 26(1)(c) (describing an exception to the rule precluding claim splitting where a plaintiff was unable to pursue a legal theory or remedy in the prior action due to limits on subject matter jurisdiction or other limits on a court's authority).

{13} Moffat contends that the federal court had only limited jurisdiction to consider his charging lien and would have had no jurisdiction to consider his contract-related claims because there was no diversity of parties. We do not agree. Federal courts have ancillary jurisdiction to entertain such attorney fee disputes in FTCA cases. *Harley & Browne v. Ressler & Ressler,* 957 F.Supp. 44, 47 (S.D.N.Y.1997) (stating that "[i]t is well-settled that [a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes ... when the dispute relates to the main action" (alterations in original, internal quotation marks and citation omitted)). Such ancillary jurisdiction over attorney fee disputes includes quantum meruit claims. *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.,* 370 F.3d 259, 261–62 (2d Cir.2004) (remand-

ing an attorney fee dispute for the district court to determine whether former attorney was terminated for cause and, if not, the appropriate quantum meruit relief, and stating that "[w]henever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees" (internal quotation marks and citation omitted)). Therefore, when we refer to the federal action, we mean the initial malpractice action as well as the post-settlement attorney fee dispute.

### Same Parties or Privies Acting in the Same Capacity

■ {14} Turning to the elements of claim preclusion, Moffat contends that Branch and Branney were not parties to the federal action; therefore, the "same parties" element of claim preclusion is not met. Indeed, Moffat claims that he himself was not a party in the federal action, which he describes as an in rem proceeding, and that he was "only a person asserting a charging lien." Moffat directs us to *Restatement* § 34(3), which states that a person who is not a party to an action "is not bound by or entitled to the benefits of the rules of res judicata." Moffat appears to contend that effectively no one was a party in the federal action. We disagree and conclude that Moffat and Branch and Branney were all parties to the attorney fee dispute and we do not consider any of them to have been "strangers" to the action in federal court. Our conclusion is grounded upon the participation by each party and his submission to the jurisdiction of the court. We also rely on the federal court's treatment, as a practical matter, of Moffat and Branch and Branney as intervenors in the malpractice action for the purpose of resolving the attorney fee dispute. *See Restatement* § 34 cmt. a (stating that non-parties may become parties by commencing an action or by "making an appearance or participating in the action in a manner that has the effect of an appearance"). The essence of the *Restatement* view is that a party is one who has had an opportunity to litigate and has been subject to the jurisdiction of the court. *Restatement* § 34 cmt. a (stating that "the opportunity to litigate is accorded to persons who are

parties"). Here, Moffat filed a charging lien and appeared before the federal court to pursue a portion of the fee. Branch and Branney filed a motion in opposition to Moffat's request and submitted a successful motion for summary judgment to the federal magistrate.

{15} We conclude that each party sufficiently participated in the attorney fee dispute in federal court so as to have been a party for claim preclusion purposes. *See Adams v. Morton*, 581 F.2d 1314, 1317 (9th Cir.1978) (holding that a formal motion to intervene is not required in order to treat a person as a party under the federal rules as long as he participated in an action and the court viewed such participation as formal entry into the dispute). It is irrelevant that Moffat and Branch and Branney are not named in the caption of the underlying malpractice action because they each had the opportunity to litigate the attorney fee dispute before the federal court and actually appeared before that court in order to resolve the dispute. *See Clarion Corp. v. Amer. Home Prods. Corp.*, 464 F.2d 444, 445 (7th Cir.1972) (discussing that the title of the case may not reflect the true dispute where a settlement has been accepted in the original action and the dispute relates to attorney fees).

{16} Moffat also contends that the case of *Bennett v. Kisluk*, 112 N.M. 221, 224, 814 P.2d 89, 92 (1991), instructs that an attorney seeking fees cannot be an adversary of his former client for the purposes of claim preclusion. This reading overextends *Bennett*. In *Bennett*, our Supreme Court held that, while an attorney's complaint for fees might trigger a compulsory counterclaim by the attorney's client for malpractice, a motion by the attorney would not. *Id.* Thus, the ruling on the attorney's motion for fees did not result in claim preclusion in the client's subsequent lawsuit claiming malpractice. *Id.* Here, the roles are reversed because Moffat is the party seeking recovery. We think implicit in *Bennett* is the notion of fair notice: that a non-movant would not necessarily know that he or she would have to assert all defenses or claims against a party who has filed a motion. Here, Moffat asserted a lien in

federal court and was in an adversarial posture with Branch and Branney before a court of competent jurisdiction. By virtue of his role as the party actively seeking recovery, we think he was on notice that he was required to either pursue all of his theories or seek an express reservation of rights from the court. Thus, we are satisfied that it is both fair and reasonable to treat Moffat and Branch and Branney as parties to the federal action. Therefore the "same party" element of claim preclusion is met.

### Same Claim

{17} We now consider whether Moffat's charging lien claim in the federal action and his amended complaint in state court are the "same claim." Federal law and New Mexico law both look to *Restatement* § 24 to evaluate what constitutes the same claim for purposes of claim preclusion. *Ford,* 119 N.M. at 413, 891 P.2d at 554. Over twenty years ago, our Supreme Court applied the *Restatement's* transactional approach to this analysis. *Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 695, 652 P.2d 240, 245 (1982), *overruled on other grounds by Universal Life Church v. Coxon,* 105 N.M. 57, 728 P.2d 467 (1986); *see generally Restatement* § 24 cmt. a at 198 (explaining that a claim is evaluated in factual terms, regardless of the legal theories raised or relief sought, and that under modern procedural rules, this approach "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so" (internal quotation marks omitted)). This approach disregards the specific legal theories or claims that were or were not invoked in a prior action, and instead directs courts to engage in a pragmatic assessment of the transaction, with a "transaction" being described as "a natural grouping or common nucleus of operative facts." *Anaya,* 1996–NMCA–092, ¶ 8, 122 N.M. 326, 924 P.2d 735 (internal quotation marks and citation omitted). "Underlying the test is the need to balance the interests of [d]efendants and of the courts in bringing litigation to a close and the interest of [a p]laintiff in the vindication of his claims." *Id.*

{18} In making a determination of whether a prior action involves the same transaction, we perform a three-step analysis: (1) we assess "the relatedness of the facts in time, space, origin, or motivation;" (2) we determine whether the facts, taken together, "form a convenient unit for trial purposes;" and (3) we consider "whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Id.* ¶ 12. If a lawsuit involves the same transaction as a prior claim, and the other claim preclusion elements are met, a plaintiff is barred from raising those legal theories that he actually raised in the prior action as well as any theories that he could have raised. *Id.* ¶ 18; *Ford,* 119 N.M. at 414, 891 P.2d at 555; *Myers,* 100 N.M. at 748, 676 P.2d at 825; *see also First State Bank v. Muzio,* 100 N.M. 98, 101, 666 P.2d 777, 780 (1983) (stating that a default judgment bars later suit on issues which were or could have been determined in the default action), *overruled on other grounds by Huntington Nat'l Bank v. Sproul,* 116 N.M. 254, 861 P.2d 935 (1993).

{19} It is clear that Moffat's contract-related claims and his charging lien involve the same claim under a pragmatic, transactional approach because all three factors weigh heavily against him. In *Three Rivers Land Co.,* our Supreme Court provided guidance on the appropriate level of abstraction in transactional analysis by describing the dispute and transaction in that case as "a land contract." 98 N.M. at 696, 652 P.2d at 246. *But cf. Bank of Santa Fe,* 2002–NMCA–014, ¶ 18, 131 N.M. 537, 40 P.3d 442 (holding that where facts underlying two claims are different in time and origin, they do not arise from a common nucleus of operative facts and are not the same transaction). Through a pragmatic lens, we view the transaction in this case as the representation of Vincoy in her medical malpractice case, the settlement, and associated attorney fees. In terms of factual relatedness, both the federal action and the state suit involve the same facts—the settlement of the medical malpractice action and Moffat's assertion that, due to his representation of Vincoy early in the proceedings, he deserved compensation. The common nucleus of operative facts is the

same in both lawsuits; indeed, the federal court evaluated some of the facts (whether Moffat produced a recovery fund for Vincoy and whether he was discharged for cause) in its resolution of the charging lien.

{20} In addition, these related facts would form a convenient unit for trial. When the federal court considered the attorney charging lien, it would have been convenient for the court also to consider whether Moffat was terminated for cause, the value of his services, any reliance by Moffat on Branch's alleged promises, and whether to carve out a portion of the settlement for Moffat. This is particularly true because under the FTCA, any attorney fees paid by Vincoy were capped by federal law at a maximum of twenty-five percent, and it would be a crime to request any additional fees from Vincoy. *Moffat I,* 2002–NMCA–067, ¶ 34, 132 N.M. 412, 49 P.3d 673. Therefore, it would have been the most convenient time to resolve the attorney fee dispute in the federal action, before the statutory attorney fee was distributed to Branch and Branney and before Vincoy's liability to pay out of the settlement funds was extinguished. Where there would be a substantial overlap between the evidence relevant to both actions, "the second action should ordinarily be held precluded." *Restatement* § 24 cmt. b. Here, it is probable that the witnesses and evidence Moffat brought in the federal action substantially overlap those he seeks to produce now in state court. Furthermore, even when the overlap of evidence or witnesses between the first action and the second would not be substantial, "the second action may be precluded if it stems from the same transaction or series." *Id.*

{21} Finally, in terms of the parties' expectations or business understanding or usage, it seems reasonable in light of longstanding federal court practice to expect that any and all controversies over attorney fees be litigated fully in the federal court where the lawsuit and settlement are being reviewed. *See Pollard v. United States,* 69 F.R.D. 646, 647 (M.D.Ala.1976) (resolving an attorney fee dispute in federal court in the context of an FTCA settlement); *Jaslow v. United States,* 308 F.Supp. 1164 (E.D.N.Y.

1970) (same); *see also Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371, 372–73 (10th Cir.1962) (affirming a federal district court's resolution of an attorney fee dispute between attorney and client, in the context of a substantial judgment against the United States). Therefore, for purposes of claim preclusion, we conclude that Moffat, through his amended complaint, is attempting to bring the "same claim" in state court that he brought in federal court.

### Other Arguments

{22} Moffat points to other aspects of this case that he argues prevent claim preclusion from applying. First, he contends that the decision in the federal action would "not foreclose subsequent litigation based upon alternative remedies." He relies on the attorney charging lien case of *Sowder v. Sowder,* 1999–NMCA–058, ¶ 16, 127 N.M. 114, 977 P.2d 1034, for the proposition that, even if a charging lien fails, an attorney is "free … to seek recovery of … fees through another method." While this is an accurate statement of the law, it does not alter claim preclusion principles that generally require a plaintiff to raise all legal theories in a single action. *Sowder* did not consider the issue; therefore, it does not stand for the idea that a creditor attorney may serially bring lawsuit after lawsuit on any theory after losing on a charging lien. *See Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (explaining that "cases are not authority for propositions not considered" (internal quotation marks and citation omitted)). The general rule remains that "[d]ifferent legal theories arising out of a given episode do not create multiple transactions and hence multiple claims." *Three Rivers Land Co.,* 98 N.M. at 695, 652 P.2d at 245 (internal quotation marks and citation omitted); *see also Restatement* § 25 (stating that a plaintiff is barred from raising any new evidence or theories or asking for any remedies that he or she failed to raise in the first action). We decline to create a special exception to claim preclusion doctrine for attorney charging liens and we see no discord in stating that an attorney is free to pursue both a charging lien and equitable remedies while adhering to established claim preclusion principles. *See*

*Thompson v. Montgomery & Andrews, P.A.,* 112 N.M. 463, 467, 816 P.2d 532, 536 (Ct.App. 1991) (stating that in the context of an attorney charging lien "a district court may freely afford the claimant an opportunity to amend in order to assert viable alternative causes of action").

{23} Second, Moffat implies that the federal court reserved Moffat's ability to bring contract-related claims in state court when the federal magistrate stated that "[t]he issue of other remedies, if any, is not before the Court." We do not agree. To provide safe harbor from claim preclusion, a court must "expressly reserve[ ] the plaintiff's right to maintain the second action." *Restatement* § 26(1)(b). It is clear that the federal court was not expressly reserving Moffat's rights to bring a second lawsuit, but was simply noting that Moffat had raised no other remedies for consideration.

{24} Finally, the *Restatement* provides other exceptions to the rule against claim splitting, such as where the parties have agreed to split claims, where the judgment in the first action was plainly contrary to a legal scheme, where a plaintiff suffers a continuing wrong, or where it is clearly and convincingly shown that an extraordinary reason (such as an invalid restraint on personal liberty or an incoherent judgment in the prior action) justifies departing from the rule. *Restatement* § 26(1)(a), (1)(d)-(f). None of these exceptions apply in this case. We therefore conclude that Branch and Branney met their burden of showing all the elements of claim preclusion.

{25} We recognize that Moffat may have been denied compensation for his early representation of Vincoy, despite Vincoy's promises that he would be paid or treated fairly. Nonetheless, Moffat's opportunity to litigate all of his theories for compensation was in federal court, when the settlement transaction was before a court of competent jurisdiction. Our Supreme Court has stated that "[a] party cannot by negligence or design withhold issues and litigate them in consecutive actions. He may not split his demands or his defenses." *First State Bank,* 100 N.M. at 101, 666 P.2d at 780 (internal quotation marks, citation, and emphasis omit-

ted). Public policy requires an end to litigation and favors judicial economy. *Id.* The capacity of our courts to hear disputes is finite and, therefore, "[t]he Restatement approach puts some pressure on the plaintiff to present all his material relevant to the claim in the first action." *Myers,* 100 N.M. at 748, 676 P.2d at 825 (internal quotation marks and citation omitted). Moffat's interest in vindicating his rights is greatly outweighed by the interest in judicial economy where, as here, he had a full and fair opportunity to litigate the same claim previously and no exceptional circumstances allow us to avoid application of the rule. Moffat simply failed to make the most of his bite at the apple, and he cannot avoid application of basic claim preclusion principles.

**CONCLUSION**

{26} The district court properly determined that Branch and Branney proved the elements of claim preclusion and that the claims raised in the amended complaint were barred. Therefore, the district court's grant of Branch and Branney's motion for summary judgment is affirmed.

{27} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and IRA ROBINSON, Judges.