924 P.2d 735

**Richard ANAYA, Plaintiff–Appellant,**

v.

**CITY OF ALBUQUERQUE, et al. and Arthur Blumenfeld, Defendants– Appellees.**

**No. 16864.**

Court of Appeals of New Mexico.

July 26, 1996.

Certiorari Denied Sept. 12, 1996.

Paul Livingston, Albuquerque, for Plaintiff–Appellant.

Robert M. White, City Attorney, Bruce T. Thompson, Assistant City Attorney, Albuquerque, for Defendants–Appellees.

## OPINION

FLORES, Judge.

1. Plaintiff appeals from an order of summary judgment dismissing his claims against

the City of Albuquerque (the City), his previous employer, and Arthur Blumenfeld, the City's chief administrative officer (referred to collectively as Defendants). Plaintiff raises several issues, all of which present us with another opportunity to consider the composition of a cause of action for the purposes of applying res judicata. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

2. Plaintiff was initially hired by the City as a laborer in 1982. Thereafter, in 1985, he was promoted to heavy equipment operator in the City's Park and General Services Department. Plaintiff alleged that the City's Substance Abuse Task Force met regularly in private session between April 1990 and February 1991 to develop a drug-testing policy and program for City employees. On March 13, 1992, the City required Plaintiff to submit to a drug test pursuant to its policy and program. Subsequently, Plaintiff was notified that he was charged with violating Administrative Instruction No. 121 (revised) (employee who operates any vehicle or equipment that requires a commercial driver's license shall submit to and pass a substance abuse test), and a pre-termination hearing was held on March 30, 1992. On March 31, 1992, the City terminated Plaintiff's employment on the grounds that the drug test results were positive and that he violated Administrative Instructions Nos. 121 (revised) and 123 (revised) (no employee shall operate or drive City equipment or vehicles which require a commercial driver's license without a current City operator's permit). Administrative grievance hearings were held on August 12, 1992, and October 5, 1992. Thereafter, on December 3, 1992, the City's Personnel Board accepted the hearing officer's recommendation to sustain the termination.

3. On August 19, 1993, Plaintiff, together with six other former City employees, filed an action against Defendants and others in district court. *Anaya v. City of Albuquerque,* No. CV 93–7720 (*Anaya I* ). Their complaint alleged that the City's substance abuse policies were invalid because the Substance Abuse Task Force failed to comply with the Open Meetings Act (OMA) in the alleged private meetings between April 1990 and February 1991. NMSA 1978, §§ 10–15–1 to –4 (Repl.Pamp.1995). *See generally Gutierrez v. City of Albuquerque,* 96 N.M. 398, 401, 631 P.2d 304, 307 (1981) (purpose of OMA is "to open the meetings of governmental bodies to public scrutiny by allowing public attendance at such meetings"). The plaintiffs sought enforcement of the OMA so as to invalidate the City's drug-testing policies and thus reverse the termination of their employment because they failed a drug test. Summary judgment was granted for the defendants in *Anaya I* on March 27, 1995, against Plaintiff and four other plaintiffs, all of whom had been terminated from employment. No appeal was taken from that final judgment.

4. Plaintiff individually initiated this action in district court on October 6, 1993. Plaintiff repeated the allegations he made in *Anaya I,* and he supplemented them with additional claims that: (1) the City's Personnel Board's processes violated the OMA; (2) the drug test violated his rights under the Fourth Amendment to the New Mexico and Federal constitutions; (3) he was deprived of his interest in employment without due process of law; and (4) Defendants breached Plaintiff's employment contract. On June 30, 1995, Defendants moved for summary judgment on the grounds of res judicata, and the trial court granted Defendants' motion on September 8, 1995.

## DISCUSSION

5. The broad question before us on this appeal is whether, under the doctrine of res judicata, the prior judgment in *Anaya I* bars Plaintiff from bringing the claims against Defendants in this action. As the parties seeking to bar Plaintiff's second action, Defendants have the burden of establishing res judicata. *See Hopkins v. Guin,* 105 N.M. 459, 463, 734 P.2d 237, 241 (Ct.App. 1986), *cert. quashed,* 105 N.M. 395, 733 P.2d 364 (1987). The district court's determination that the prior judgment was res judicata to Plaintiff's claims in this case is a legal question that is reviewable de novo. *See Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1237 (10th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992); *Schuel-*

*ler v. Schueller,* 117 N.M. 197, 199, 870 P.2d 159, 161 (Ct.App.1994) (question of law reviewed de novo); *Blea v. Sandoval,* 107 N.M. 554, 557, 761 P.2d 432, 435 (Ct.App.) (effect of prior judgment "is a legal question that does not require a review of the facts"), *cert. denied,* 107 N.M. 413, 759 P.2d 200 (1988).

6. There are four requisite elements for the application of res judicata: (1) the same parties or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject matter; and (4) the same cause of action in both suits. *Myers v. Olson,* 100 N.M. 745, 747, 676 P.2d 822, 824 (1984); *Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 694, 652 P.2d 240, 244 (1982), *overruled on other grounds by Universal Life Church v. Coxon,* 105 N.M. 57, 59, 728 P.2d 467, 469 (1986), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2482, 96 L.Ed.2d 374 (1987). Here, the parties do not dispute that the first three elements have been met. It is the fourth requirement, identity of the causes of action, that is at the heart of this dispute.

7. Our Supreme Court has adopted the rules contained in the *Restatement (Second) of Judgments* Sections 24 and 25 (1982) (*Restatement*), for guidance in deciding what constitutes a cause of action for res judicata purposes. *Three Rivers Land Co.,* 98 N.M. at 695, 652 P.2d at 245. Section 24 of the *Restatement* provides:

> (1) ... the claim extinguished [by a first judgment] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

8. Defendants characterize Plaintiff's two lawsuits as challenges to his termination from employment, and they argue that the only differences between the two actions are the legal theories advanced to secure reinstatement. The transactional test requires us to go beyond any similarity in desired outcome and to examine the operative facts underlying the claims made in the two lawsuits. *See* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4407 (1981) ("single legal wrong" phrase used in traditional res judicata formulas should be discarded); *Restatement, supra,* § 24 cmt. b (concept of a "transaction" as used in the *Restatement* "connotes a natural grouping or common nucleus of operative facts"). Underlying the test is the need to balance the interests of Defendants and of the courts in bringing litigation to a close and the interest of Plaintiff in the vindication of his claims. *See* 18 Wright, Miller & Cooper, *supra,* § 4407; *Restatement, supra,* § 24 cmt. b.

9. In *Anaya I* the plaintiffs alleged that the City's Substance Abuse Task Force met in secret, closed session from April 1990 through February 1991. According to the plaintiffs, the Substance Abuse Task Force discussed, formulated, and promulgated Administrative Instructions Nos. 121 and 123 that Plaintiff was later charged with violating. The violations alleged by the City resulted in the termination of Plaintiff's employment. Plaintiff makes the same allegations in this case. Plaintiff's claim in *Anaya I* completely overlaps a similar claim he has made in this case. Thus, we hold that summary judgment was proper in this case with respect to that claim—Plaintiff's challenge to the validity of the procedures by which the pertinent administrative instructions were developed. *See Carter v. Thurber,* 106 N.M. 429, 431–32, 744 P.2d 557, 559–60 (Ct. App.1987) (summary judgment proper where only question was res judicata effect of prior judgment). Plaintiff's additional claims in this action, however, merit further examination.

10. Those additional claims and related allegations are as follows: (1) Defendants violated Plaintiff's rights under the Fourth Amendment in that the City had no suspicion Plaintiff was using drugs nor had any valid

reason for requiring a drug test, and any off-duty use was not related to Plaintiff's on-duty work or conduct; (2) Plaintiff did not receive due process because the City did not allow him to appeal the drug test results, the grievance hearing was unreasonably delayed, the hearing officer was neither competent nor properly selected, Plaintiff was improperly allocated the burden of proving the discharge was erroneous, no valid, written procedural rules were in effect for the hearing, and the chairman of the Personnel Board was neither neutral nor properly selected; (3) Defendants violated the OMA in that the hearing officer, members of the Personnel Board, and the board chairman were selected and appointed in secret and closed meetings, and the Personnel Board addressed Plaintiff's grievance in two closed meetings; and (4) the discipline imposed on Plaintiff violated express and implied provisions of his employment contract with the City.

■ 11. This appeal requires us to determine whether the facts underlying Plaintiff's OMA claim in *Anaya I* and the facts underlying his additional claims made here are so interwoven as to constitute a single claim for purposes of res judicata. We approach this task mindful of the different rationales for application of res judicata: "to protect individuals from the burden of litigating multiple lawsuits[;] to promote judicial economy[;] and to promote the policy favoring reliance on final judgments by minimizing the possibility of inconsistent decisions." *Myers,* 100 N.M. at 747, 676 P.2d at 824.

■ 12. As indicated previously, Section 24(2) of the *Restatement* directs us to consider: (1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage. *See also* M.E. Occhialino, *Walden's Civil Procedure in New Mexico* 12–32 (2d ed. 1988) (the *Restatement* offers a three-step approach to determine whether both actions arise out of the same transaction or series of connected transactions).

### 1. *Relatedness of Facts*

■ 13. In this case, the significant operative facts differ with respect to substance, time, and Defendants' motivation. Plaintiff's claim under the OMA in *Anaya I* involved meetings which allegedly occurred from April 1990 through February 1991, while the claims presented in the subsequent lawsuit concern actions commencing over a year later in March 1992 when Plaintiff was terminated after he failed a drug test. The City's prior decisions regarding the mechanism to be used for policy formulation, staffing of the Personnel Board, and grievance procedures appear to have stemmed from process concerns unrelated to the City's later reasons for promulgating the substance abuse policy, testing Plaintiff's urine, and deciding to discharge him. The allegations in the second complaint are different from those made in the first action. The thrust of the first suit was the procedure used to formulate workplace policy, while the second action focused on the constitutionality of the policy itself and Plaintiff's termination process. Finally, the wrong charged in the first suit was a statutory violation regarding rule-making, while the wrongs claimed in the second suit included additional statutory violations, deprivation of constitutional rights, and breach of contract. *Cf. Ford v. New Mexico Dep't of Pub. Safety,* 119 N.M. 405, 414, 891 P.2d 546, 555 (Ct.App.1994) (the same operative facts formed the basis of both of the plaintiff's complaints; the allegations in both complaints were almost identical; the thrust of both actions was the employer's actions against the plaintiff; and the same alleged wrongs were sought to be addressed in both lawsuits), *cert. denied,* 119 N.M. 354, 890 P.2d 807 (1995).

### 2. *Trial Convenience*

14. In considering whether the facts form a convenient unit for trial, we examine overlap of the witnesses and evidence relevant to the claims in the two lawsuits. *See Restatement, supra,* § 24 cmt. b. The only mention of Plaintiff in the trial court's findings of fact and conclusions of law in *Anaya I* pertains to his dismissal from employment with the City for failing a drug test in violation of its

substance abuse policy. The other findings pertinent to the OMA claims in *Anaya I* relate to the overall process by which the substance abuse policy was developed. Outside of a demonstration of Plaintiff's status sufficient to establish his standing under the OMA, no proof of Plaintiff's job duties or of the circumstances and procedures attending the decision to terminate his employment was called for in *Anaya I.*

15. In this case, however, where Plaintiff has alleged that there was no connection between off-duty drug use and his work and that the specific termination process used in his case was deficient, evidence bearing on his job duties and the details of the process by which he was terminated would be required. We cannot say that witnesses and evidence pertinent to Plaintiff's claim that the Substance Abuse Task Force violated the OMA would have been of any value in substantiating his later additional claims, and vice versa. In contrast with the original OMA claim, the other claims made in this case involve allegations of conduct by different persons in dissimilar situations and at distinct times. These differences in requirements of proof suggest that the claims advanced in the two cases do not form a convenient trial unit.

16. Defendants argue that Plaintiff's inclusion of the original OMA claim in the second lawsuit is evidence of his belief that the claims made in the two lawsuits formed a convenient unit for trial purposes. We are not persuaded. Substantial additional litigation would have been required if, in addition to Plaintiff, the other six plaintiffs in *Anaya I* also had pressed their unique personal claims in the same case. The claims that constitute a convenient trial unit for a single plaintiff do not necessarily form a serviceable combination where there are multiple plaintiffs. *See* 18 Wright, Miller & Cooper, *supra*, § 4407, at 52 ("litigants must be left free to assess the elusive and perhaps irrational advantages of different configurations of parties"); *cf. Restatement, supra*, § 24, cmt. e ("rule against splitting ... takes as its model a claim and action by a single plaintiff against a single defendant"). Moreover, we can understand why the seven plaintiffs

made only a single claim in *Anaya I;* had they prevailed on the original OMA claim, they would have been reinstated as City employees and resolution of their numerous and more complex individual claims would have been unnecessary. *Cf.* 18 Wright, Miller & Cooper, *supra*, § 4407, at 51–52 ("Rules requiring assertion of all claims at once on pain of forfeiture would often increase litigation of matters that otherwise would be forgotten or forgiven."), and § 4408, at 71 ("[C]laim preclusion rules should not require unduly complex litigation."). Thus, the segregation of claims personal to Plaintiff had the potential of promoting rather than undermining judicial economy. *Cf. Myers,* 100 N.M. at 747, 676 P.2d at 824 (one rationale for application of res judicata is to promote judicial economy).

### 3. *Parties' Expectations*

17. As of the time of the trial and judgment in *Anaya I,* the action underlying this appeal was pending in district court and the additional issues in this case had not been developed. In fact, the only litigation action in this case of any substance subsequent to the filing of Defendants' answers was the taking of Plaintiff's deposition by the City. Under these circumstances, we cannot say that Defendants had reason to expect that the additional claims raised in this case were precluded by the judgment against Plaintiff in the prior lawsuit. *Cf. Myers,* 100 N.M. at 748, 676 P.2d at 825 (divorcing parties had every reason to expect that stipulated final decree would finally resolve all property issues concerning the property items covered by the decree). Nor can we say that the courts' and Defendants' interests in bringing litigation to a close outweigh Plaintiff's interest in the vindication of his claims.

18. Lastly, we note that Defendants cite *Ford* for the proposition that "[c]laim preclusion does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted." *Ford,* 119 N.M. at 414, 891 P.2d at 555; *see also Myers,* 100 N.M. at 747, 676 P.2d at 824 (claim ordinarily precluded by res judicata when there has been full, fair opportunity to

litigate all issues arising from claim). This is an accurate statement of the law. However, because we determine today that the two lawsuits discussed above did not arise out of the same transaction, we need not address this proposition relied on by Defendants.

*CONCLUSION*

19. Our review of the facts underlying the claims in the two lawsuits and the attending circumstances convinces us that res judicata should operate to bar only Plaintiff's original OMA claim. We affirm the order of summary judgment with respect to Plaintiff's claim that Defendants, through the activities of the Substance Abuse Task Force, violated the OMA. We reverse the order of summary judgment with respect to Plaintiff's other claims.

20. **IT IS SO ORDERED.**

APODACA, C.J., and WECHSLER, J., concur.