2005 NMCA 059
CAROL PLATT CAGAN, J.D. WOLF, and LOBO LAND, LLC, a New Mexico Limited Liability Company, Plaintiffs-Appellants,
v.
VILLAGE OF ANGEL FIRE, A.L. "BUBBA" CLANTON, individually and in his capacity as Mayor of the Village, and DON LUSK, individually and in his capacity as Village Administrator, Defendants-Appellees.
Docket No. 24,142.
Court of Appeals of New Mexico.
Filing Date: April 14, 2005.
Corrected June 1, 2005.
Linda G. Hemphill, Stephanie A. Fuchs, Linda G. Hemphill, P.C., Santa Fe, NM, for Appellants.
James P. Sullivan, Gianna M. Mendoza, Sullivan Law Firm, P.A., Santa Fe, NM, for Appellees.

OPINION
KENNEDY, Judge.
{1} Carol Platt Cagan, J.D. Wolf, and Lobo Land (Plaintiffs), filed two cases against the Village of Angel Fire and its officials (referred to collectively as the Village).[1] The first case (Case I) was dismissed with prejudice for failure to prosecute. While the dismissal of Case I was pending, Plaintiffs filed a second case (Case II) that included claims similar to those in Case I. The district court granted summary judgment to the Village in Case II on grounds that collateral estoppel and res judicata barred Plaintiffs' entire complaint as a result of the dismissal of Case I. It is from this order that Plaintiffs appeal.
{2} The application of res judicata does not require the end of one case to give it preclusive effect as against another. We therefore affirm the district court's dismissal of three of Plaintiffs' claims in Case II, as these claims are barred by res judicata. Lastly, one claim in Case II did not share enough in common with the Case I claims to be precluded by res judicata; as to that claim we reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
{3} This is not the first time Plaintiffs have asserted that the Village has made politically motivated decisions against established Village policies and ordinances concerning Plaintiffs' businesses. In Case I, on February 17, 2000, Plaintiffs filed a complaint against the Village. The Case I complaint asserted a 42 U.S.C. § 1983 (1996) claim. Case I also contained claims for assault, battery, defamation, intentional interference with contractual relations, conversion, anticipatory breach of contract, and damage to property. The critical claims for the purposes of this appeal are the Section 1983 claim and the anticipatory breach of contract claim, involving the alleged breach of an April 6, 1998, agreement amended June 30, 1998 (Agreement and Amendment).
{4} On October 23, 2001, the Village filed a motion to dismiss Plaintiffs' complaint in Case I for failure to prosecute their claims. It appears from the record proper that Plaintiffs never responded to the motion. On September 11, 2002, the Village filed a second motion to dismiss Plaintiffs' complaint in Case I for failure to prosecute their claims, on grounds that Plaintiffs failed to take any significant action on their complaint within the previous two years. Two days later, on September 13, 2002, new counsel for Plaintiffs entered an appearance in Case I. On the same day, new counsel for Plaintiffs filed a second complaint. This Case II complaint again named the Village as a Defendant. It also named A.L. "Bubba" Clanton, individually and as the Village mayor, and Don Lusk, individually and as the Village administrator.[2] Case II asserted claims for breach of contract (Count I), inverse condemnation/fifth amendment takings (Count II), and two counts pursuant to Section 1983 for violation of substantive due process (Count III) and violation of Plaintiff Carol Platt Cagan's right to petition the courts (Count IV).
{5} On November 13, 2002, the Village filed its answer to the complaint in Case II, raising the affirmative defenses of collateral estoppel and res judicata. Case I was not dismissed until December 4, 2002. After oral argument from the parties, the district court dismissed the Case I complaint with prejudice. Two months later, the Village filed a motion for summary judgment in Case II on the grounds that the Case II claims were barred by collateral estoppel and res judicata given the district court's dismissal of Case I. After hearing oral argument, the district court granted the Village's motion for summary judgment, dismissing Plaintiffs' complaint in Case II in its entirety. Plaintiffs appealed from that order.

DISCUSSION

Collateral Estoppel Will Not Be Addressed
{6} The district court's order dismissed the complaint in Case II in its entirety, but did not indicate the grounds upon which it relied for its decision. Plaintiffs assert that their case was not barred because of collateral estoppel. However, the Village concedes in its answer brief that the doctrine of collateral estoppel does not apply to this appeal. Consequently, we will not address collateral estoppel as a sufficient justification for dismissing Case II, only addressing whether res judicata precludes adjudication of the Case II claims.

Standard of Review
{7} Although the parties disagree about the type of order from which the appeal is taken, they agree that the standard of review is de novo.[3] The decision of whether res judicata applies to bar a party's claims is a question of law that we review de novo. Anaya v. City of Albuquerque, 1996-NMCA-092, ¶ 5, 122 N.M. 326, 924 P.2d 735. As the party seeking to bar Plaintiffs' claims, the Village had the burden of establishing the elements of res judicata. Id.

Res Judicata

1. Requirement of Adjudication on the Merits and Rule 1-041 NMRA Dismissals
{8} In order for the doctrine of res judicata to apply, the action asserted to have preclusive effect must have concluded with a final adjudication on the merits. See Myers v. Olson, 100 N.M. 745, 747, 676 P.2d 822, 824 (1984) ("Under the doctrine of res judicata, a prior judgment on the merits bars a subsequent suit involving the same parties or privies based on the same cause of action."). Therefore, the first question is whether the Case I order of dismissal with prejudice for failure to prosecute pursuant to Rule 1-041(E)(1) NMRA constitutes an adjudication on the merits. Other than Smith v. Walcott, 85 N.M. 351, 512 P.2d 679 (1973), there appears to be no other cases directly addressing this question. A few cases have implied that such a dismissal does constitute an adjudication on the merits. See, e.g., Eager v. Belmore, 53 N.M. 299, 307, 207 P.2d 519, 524 (1949) (reaffirming that Rule 1-041(E) has the effect of a statute of limitation and affirming that an order dismissing a complaint with prejudice pursuant to a Rule 1-041(E) motion for failure to prosecute barred the defendant from asserting his cross-complaint). The parties in this appeal argue different interpretations of Smith to support their contentions.
{9} Before addressing Smith, it should be noted that Rule 1-041 was amended in 1990. See Vigil v. Thriftway Mktg. Corp., 117 N.M. 176, 178-79, 870 P.2d 138, 140-41 (Ct. App. 1994) (discussing the amendment of Rule 1-041). Cases filed before January 1, 1990, rely on Rule 1-041 NMRA (Recomp. 1986) (referred to as the former rule), under which a dismissal for failure to prosecute within three years specifically operated to bar a subsequent action on the same subject matter.[4] The current Rule 1-041 (referred to as Rule 1-041 or the current rule) provides for when the dismissal of an action is with prejudice and without prejudice. See Rule 1-041(E)(1)(2). Subsection (E) is at issue in this appeal. It states:
(1) Any party may move to dismiss the action, or any counterclaim, cross-claim or third-party claim with prejudice if the party asserting the claim has failed to take any significant action to bring such claim to trial or other final disposition within two (2) years from the filing of such action or claim. An action or claim shall not be dismissed if the party opposing the motion is in compliance with an order entered pursuant to Rule 1-016 NMRA or with any written stipulation approved by the court.
(2) Unless a pretrial scheduling order has been entered pursuant to Rule 1-016 NMRA, the court on its own motion or upon the motion of a party may dismiss without prejudice the action or any counterclaim, cross-claim or third party claim if the party filing the action or asserting the claim has failed to take any significant action in connection with the action or claim within the previous one hundred and eighty (180) days. A copy of the order of dismissal shall be forthwith mailed by the court to all parties of record in the case. Within thirty (30) days after service of the order of dismissal, any party may move for reinstatement of the case. Upon good cause shown, the court shall reinstate the case and shall enter a pretrial scheduling order pursuant to Rule 1-016 NMRA. At least twice during each calendar year, the court shall review all actions governed by this paragraph.
Id. Subsection (E) was essentially rewritten and differs from the former rule in several ways. It provides for dismissal of an action with prejudice by a motion that is not in written form. Rule 1-041(E)(1). Also omitted from the current rule is the former rule's language describing the res judicata effect of a dismissal with prejudice. Rule 1-041(E)(2) also now provides for the dismissal of an action without prejudice for lack of prosecution, either by motion of a party or on the court's own motion. See id.; Vigil, 117 N.M. at 179, 870 P.2d at 141 (discussing dismissals under the current version of Rule 1-041(E)(2)). Although a dismissal without prejudice was not expressly provided for in the former rule, cases filed before the current rule took effect in 1990 nevertheless recognized the court's inherent power to dismiss a case sua sponte for lack of prosecution. See, e.g., Smith, 85 N.M. at 354, 512 P.2d at 682. The question then is whether the Case I dismissal with prejudice under Rule 1-041(E)(1) operates as an adjudication on the merits. In this case, we hold that it does.
{10} In Smith, the plaintiff's first case was dismissed sua sponte in 1970 for lack of prosecution after the defendants admitted some of the debt alleged and promised to pay in their answer. Smith, 85 N.M. at 353, 512 P.2d at 681. In 1972, the plaintiffs filed in the same district court a claim that the defendants had not paid on the same promissory note that was the subject of the first case, further asserting the defendants' admission in the first case as to their liability under the note and the specific amount owed. Id. The defendants filed an answer and motion to dismiss the second case. Id. at 354, 512 P.2d at 682. The defendants also filed a motion under the first case pursuant to the former Rule 1-041(E) seeking dismissal with prejudice. Id. The same district judge that entered the 1970 order of dismissal entered another order dismissing the complaint in the first case with prejudice. Id.
{11} Our Supreme Court determined that the 1970 order dismissing the complaint in the first case, entered sua sponte by the district court without a motion or hearing, did not constitute an adjudication on the merits; thus, the doctrine of res judicata did not apply. Id. at 355, 512 P.2d at 683. The Court further determined that the district court's 1970 sua sponte order, entered pursuant to the court's inherent power to dismiss a cause for failure to prosecute, constituted a final order and effectively terminated the case until properly reinstated. Id. Since no case was pending in 1972, there was no cause of action to dismiss "with prejudice." Id. The Court also noted that the district court had not followed any of the procedures contemplated by Rule 1-041(E) in entering the original sua sponte dismissal. Id. at 354, 512 P.2d at 682. The Court stated that the rule contemplated a hearing on a motion to dismiss where the parties have an opportunity to present evidence on the issue of whether a party has taken any action to bring the case to its final determination. Id.
{12} Smith is distinguishable here on its facts. Unlike Smith, where the dismissal was sua sponte by the court, in this case the Village filed a motion for summary judgment pursuant to Rule 1-041(E) and oral argument was held. See id. at 354, 512 P.2d at 682. Contrary to Plaintiffs' assertions, Smith is not therefore direct authority for their argument that a dismissal for lack of prosecution is not an adjudication on the merits. Smith differs in that it holds that an adjudication on the merits does not flow from a sua sponte order of dismissal for lack of prosecution absent a hearing. Id. at 354-55, 512 P.2d at 682-83. Here, we hold that when a dismissal with prejudice for lack of prosecution is entered pursuant to a written motion and after a hearing on the merits where the losing party has had notice and an opportunity to be heard, a dismissal under Rule 1-041(E)(1) constitutes an adjudication on the merits.
{13} This holding is also supported by the relationship between Subsections (B) and (E)(1) of Rule 1-041. Both Subsections (B) and (E)(1) "require longer periods of inaction and have very strict standards," Vigil, 117 N.M. at 180, 870 P.2d at 142, that result in "a serious sanction for extremely dilatory parties and their counsel." Id. at 179, 870 P.2d at 141. However, Subsection (E)(2) was "designed to serve a different purpose" than Subsections (B) and (E)(1). Id. Like Subsection (E)(2), Subsection (B) allows for an involuntary dismissal for failure to prosecute. Rule 1-041(B), (E)(2). Unlike Subsection (E)(2), however, Subsection (B) actually states that, absent the court's indicating otherwise, such a dismissal "operates as an adjudication upon the merits." Rule 1-041(B).
{14} The Village's motion to dismiss in Case I asserted both subsections as a basis for dismissal. We note that notice and an opportunity to be heard are essential to a decision on the merits, even if a written motion under Subsection (E)(1) is not. Otero v. Sandoval, 60 N.M. 444, 446, 292 P.2d 319, 320 (1956). The existence of a decision on the merits only becomes an issue when res judicata is asserted. Rule 1-041(B) cases provide us with some guidance in this regard. For example, in Lowery v. Atterbury, 113 N.M. 71, 823 P.2d 313 (1992), our Supreme Court rejected a due process challenge to a sua sponte dismissal with prejudice for lack of prosecution under Rule 1-041(B). Lowery, 113 N.M. at 73, 823 P.2d at 315. Although lacking notice and a hearing before dismissal, the Court held that the order did not violate due process rights. Id. (reaffirming established authority that Rule 1-041(B) does not require notice and a hearing); cf. Newsome v. Farer, 103 N.M. 415, 417, 708 P.2d 327, 329 (1985) (rejecting a due process challenge to an order of dismissal, and concluding that such an order under Rule 1-041(B) for failure to comply with a court order was not an adjudication on the merits, and neither notice nor a hearing were required). However, while dismissal under Rule 1-041(B) may not require a notice and a hearing, for an order of dismissal to have res judicata effect, notice and a hearing must be provided, and the result is an adjudication on the merits. See Otero, 60 N.M. at 445-46, 292 P.2d at 320 (concluding that mandate of Rule 1-041(B) that "any dismissal not provided for in this rule . . . operates as an adjudication upon the merits" only applies to a dismissal where the party had notice (internal quotation marks, citation, and emphasis omitted)). Under these circumstances, the requirements of notice and a hearing remain essential for an adjudication on the merits.
{15} The order of dismissal entered pursuant to the Village's motion for summary judgment under Subsections (B) and (E)(1) of Rule 1-041 constituted an adjudication on the merits. Therefore, the doctrine of res judicata applies. To the extent that the other elements of res judicata are met, this doctrine will act as a bar to Plaintiffs' claims.

2. The Fact That Case I and Case II Were Pending at the Same Time Does Not Preclude the Application of Res Judicata
{16} Plaintiffs argue that because Case II was filed while Case I was still pending, res judicata is inapplicable. However, as Plaintiffs point out, there is a New Mexico case that directs us to the opposite conclusion. In Carter v. Thurber, 106 N.M. 429, 744 P.2d 557 (Ct. App. 1987), the plaintiff appealed from a summary judgment dismissing with prejudice his state court action against the defendants. Id. at 430, 744 P.2d at 558. The trial court determined that the plaintiff's state court claims were barred by res judicata because of a prior dismissal for lack of prosecution in a federal district court case. Id. The plaintiff argued that because the state court action was filed before the federal action, it did not constitute a subsequent action and, therefore, res judicata was inapplicable. Id. The plaintiff relied on Myers, which stated: "Under the doctrine of res judicata, a prior judgment on the merits bars a subsequent suit involving the same parties or privies based on the same cause of action." Carter, 106 N.M. at 432, 744 P.2d at 560 (internal quotation marks and citation omitted). Relying on the rationale of an Arizona case, this Court concluded that res judicata applied because "if two actions involving the same issues and parties are pending at the same time when a judgment in one becomes final, it may be raised in bar of the other, regardless of which action was begun first." Id.
{17} Here, Case I was filed first, but was still pending at the time Case II was filed. Plaintiffs argue that Case II does not constitute a "subsequent" suit because it was filed while Case I was still pending. However, under Carter, res judicata is applicable regardless of the fact that the cases overlapped. See id. For this reason, we conclude that the timing of Cases I and II does not bar the application of res judicata.

3. Which of Plaintiffs' Case II Claims Involve the Same Causes of Action and Subject Matter as Plaintiffs' Case I Claims?
{18} We next address whether the elements of res judicata are met. "Res judicata applies when four elements are met: (1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) same cause of action, and (4) same subject matter." Three Rivers Land Co. v. Maddoux, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982), rev'd on other grounds by Universal Life Church v. Coxon, 105 N.M. 57, 59, 728 P.2d 467, 469 (1986). Plaintiffs appear to concede that the first two prongs of this test are not at issue, and do not argue whether or not they are met. Even though a question of privity might arise on the facts before this Court, we may not fairly address an issue that is abandoned and to which the Village did not have an opportunity to respond. Therefore, we deal only with the cause of action and subject matter requirements of res judicata in these cases.
{19} To answer the question of whether the causes of action are the same, we must determine whether Case I and Case II arose out of the same transaction or series of connected transactions. Three Rivers Land Co., 98 N.M. at 695, 652 P.2d at 245. Three Rivers Land Co. adopted the Restatement (Second) of Judgments §§ 24, 25 (1982), as a guideline for determining what constitutes a cause of action for the purposes of res judicata. Three Rivers Land Co., 98 N.M. at 695, 652 P.2d at 245. Restatement (Second) of Judgments § 24 is titled "Dimensions of `Claim' for Purposes of Merger or BarGeneral Rule Concerning `Splitting.'" Restatement, supra, § 24, at 196. Section 24 states that:
(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.
Id. Restatement (Second) of Judgments § 25, entitled "Exemplifications of General Rule Concerning Splitting," provides:
The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action
(1) To present evidence or grounds or theories of the case not presented in the first action, or
(2) To seek remedies or forms of relief not demanded in the first action.
Id. Applying these principles and the transactional test adopted in Three Rivers Land Co., we must "examine the operative facts underlying the claims made in the two lawsuits." Anaya, 1996-NMCA-092, ¶ 8. We thus address each of Plaintiffs' claims in Case II separately to decide whether they involve the same cause of action and subject matter.

a. Breach of Contract and Anticipatory Breach
{20} The complaint in Case I asserted that under terms of the Agreement and Amendment the Village agreed to include Plaintiffs' property in the Village assessment district. By including the property in the assessment district, the Village was obligated to provide and maintain all roads and utilities to the property, the work for which was to be completed and accepted by the Village no later than November 2001. The complaint asserted anticipatory breach of contract based on the allegation that the Village breached the Agreement and Amendment by abandoning the assessment district and failing to commence installation of the infrastructure as promised.
{21} The breach of contract claim asserted in Case II alleged as completed the same actions that constituted the anticipatory breach claim in Case I, namely that in May 1999 the Village narrowed the scope of the assessment district to include only water and sewer in violation of the Agreement and Amendment. The breach of contract claim in Case II thus was based on Plaintiffs' allegations that the Village failed or refused to honor its obligations to provide the services as promised by the same Agreement and Amendment, and thus the same claim relied upon for the anticipatory breach of contract claim asserted in Case I. The Case II claim for actual breach added no more than an allegation that the Village accomplished the breach that Case I said would happen. Otherwise, both causes of action relied upon the Village's breach of the Agreement and Amendment.
{22} There is not much functional difference between claiming anticipatory and actual breach of a contract. Plaintiffs could have asserted their breach of contract claim in Case I, and would have been entitled there to damages for total breach. Anticipatory breach of contract is defined as a breach caused by "a party's anticipatory repudiation, i.e., unequivocally indicating that the party will not perform when performance is due." Black's Law Dictionary 182 (7th ed. 1999). We have held that where a defendant's actions evince "a distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement," a plaintiff can demonstrate sufficient repudiation justifying nonperformance of the contract. Gilmore v. Duderstadt, 1998-NMCA-086, ¶ 15, 125 N.M. 330, 961 P.2d 175 (internal quotation marks and citations omitted). In Gilmore, we indicated that if anticipatory repudiation was proven on retrial, the plaintiff would be entitled to his compensatory damages for the total breach. Id. ¶ 20.
{23} The subject matter of this action arose in May 1999 when the Village notified Plaintiffs that it decided to narrow the scope of the assessment district to include only water and sewer despite the promises it had made in the Agreement and Amendment. See id. ¶¶ 15, 20. The causes of action and subject matter were the same because they arose out of the same Agreement and Amendment and refusal of the Village to honor its promises. Thus, Defendants could have asserted their breach of contract claim in Case I and would have been entitled to damages for the total breach. See, e.g., id. ¶ 20.
{24} Thus, there is no practical distinction to make between the causes of action in Case I and Case II. See Anaya, 1996-NMCA-092, ¶ 6 (stating that the third and fourth prongs of the res judicata test require that the two claims represent the "same subject matter" and the "same cause of action"). Since the action is brought against the Village, and constitutes the same cause of action and subject matter, there is no difference between the claims Plaintiffs brought in Case I for anticipatory breach and the breach of contract claim brought in Case II. We therefore hold that once dismissed in Case I, the contract claim in Case II was barred by res judicata. See id. ¶ 5.

b. Plaintiffs' Inverse Condemnation/Fifth Amendment Takings Claim and Due Process/Section 1983 Claims (Counts II and III) Involve the Same Subject Matter and Cause of Action
{25} In Counts II and III of Case II, Plaintiffs alleged that the Village's failure to provide and maintain roads and utilities as promised in the Agreement and Amendment constituted a taking without due process or compensation. This claim also arises out of the same transaction as the anticipatory breach of contract claim in Case I. The remedy Plaintiffs seek (money damages) is also the same. The only difference between these claims is the legal theory asserted. See Restatement (Second) of Judgments § 25 (extinguishing the plaintiff's claim in the second action despite the presentation of theories not asserted in the first action). Plaintiffs could have as easily brought this claim in Case I. See City of Sunland Park v. Macias, 2003-NMCA-098, ¶ 18, 134 N.M. 216, 75 P.3d 816 ("Res judicata bars not only claims that were raised in the prior proceeding, but also claims that could have been raised."); Restatement (Second) of Judgments § 25 cmt. d;[5] Restatement (Second) of Judgments § 24 cmt. c ("That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims."). As these claims arose out of the same transaction, res judicata bars Plaintiffs' Fifth Amendment takings claims and due process/Section 1983 claims in Case II. See Anaya, 1996-NMCA-092, ¶ 6 (setting forth the elements of res judicata).

c. Plaintiff Cagan's Civil Rights Claim in Case II, Count IV Was Not Adjudicated on Its Merits in Case I and Is Not Barred
{26} Plaintiffs assert that the Village failed to meet their burden of proving that summary judgment as to the Section 1983 claim alleged in Count IV was proper because dismissal of this claim was not requested or addressed in the Village's motion or at the hearing. See Pollock v. State Highway & Transp. Dep't, 1999-NMCA-083, ¶ 5, 127 N.M. 521, 984 P.2d 768 (stating that the party moving for summary judgment "has the burden of establishing a prima facie case showing there was no genuine issue of material fact" for each issue (internal quotation marks and citation omitted)). We agree.
{27} The Village's motion for summary judgment argued that the doctrine of res judicata barred Plaintiffs from bringing the claims raised in Counts I, II, and III. The Village also sought summary judgment on Count IV, but on different grounds. It asserted that Count IV was barred by the statute of limitations because the retaliatory incident alleged in Count IV occurred on June 28, 2000, and the Case II complaint was not filed until September 13, 2002. The Village later withdrew this argument and did not request summary judgment in writing on an alternative ground for Count IV. Nevertheless, the order granting the Village's motion for summary judgment determined that the complaint should be dismissed in its entirety. We conclude that the Village was not entitled to summary judgment as a matter of law on this count for the reasons set forth below. See Martinez v. Logsdon, 104 N.M. 479, 482-83, 723 P.2d 248, 251-52 (1986) (indicating that the court would not be barred from granting summary judgment sua sponte if proper, i.e., there were no material fact issues in dispute and the moving party was entitled to summary judgment as a matter of law).
{28} Plaintiffs' Section 1983 claim in Case I was based on allegations that in retaliation for Plaintiffs' political opposition to them or their official actions: (1) the Village interfered with their contractual rights to deliver concrete by ordering the subcontractor of the project to terminate Plaintiffs because they supported certain candidates for the Village positions; (2) the Village red-tagged two of their concrete trucks, forcing them to dump a load of concrete for violating a state regulation requiring concrete to be off-loaded within ninety minutes; (3) the Village denied their bid to do work for the Village, even though their bid was the lowest one; and (4) the Village interfered with Plaintiff Cagan's ability to operate a business by failing to timely approve her plans to relocate her business, thus requiring her to store retail inventory, delaying the approval of her sign permit, and threatening to require her to remodel her business to meet building codes not enforced against other similarly situated businesses. Plaintiffs claimed that these actions (1) deprived them of their constitutional rights of free speech and association because the Village had a pattern of retaliating against businesses based on their political beliefs, racial background, and religious practices, (2) interfered with and threatened their contract and commercial use of property rights merely because they supported certain candidates for Village positions, and (3) violated their due process and equal protection rights by selectively enforcing state regulations and zoning laws against them.
{29} In Count IV of Case II, Plaintiffs' allege that the Village violated Plaintiff Cagan's first amendment rights by interfering with her right to petition the courts. Specifically, the complaint asserted that on June 28, 2000, Clanton and Lusk ordered that the utilities to Cagan's residence be shut off, ordered that Cagan be restrained and handcuffed, and required Cagan to immediately pay for the water bills she had disputed. The Case II complaint alleged that these actions were in retaliation for Cagan's having filed the lawsuit in Case I, and for her continuing protest of the wrongful actions of the Village and its officials. The Village asserts that although the actual forms of retaliation may differ between Cases I and II, Plaintiffs used the same legal theories for both. Consequently, the Village argues, Plaintiffs' Section 1983 retaliation claims arise from the same series of connected transactions, namely the Village's alleged wrongful conduct.
{30} These allegations constitute a different claim because the facts supporting it occurred after Case I was filed. The situation is analogous to DiMatteo v. County of Dona Ana, 109 N.M. 374, 379, 785 P.2d 285, 290 (Ct. App. 1989), where this Court concluded that a prior judgment on the plaintiff's claim for medical benefits did not bar subsequent litigation as to his disability benefits. The plaintiff alleged that he became disabled after the original award of medical benefits. Id. at 376, 785 P.2d at 287. Here, too, we confront facts that arose subsequent to an initial claim.
{31} The Village argues that Plaintiffs could have amended their complaint in Case I to include these additional forms of retaliation because Case I was not dismissed until December 4, 2002, approximately two and a half years after the June 2000 handcuffing incident. The question is whether this claim could have been raised in Case I. Macias, 2003-NMCA-098, ¶ 18 ("Res judicata bars not only claims that were raised in the prior proceeding, but also claims that could have been raised."). Arguably, it could have been raised in Case I by supplemental pleading. Elec. Supply Co. v. United States Fid. & Guar. Co., 79 N.M. 722, 725, 449 P.2d 324, 327 (1969) (concluding that the defendant did not waive a statute of limitations defense by failing to apply to the court to file a supplemental answer under Rule 1-015(D) NMRA; Rule 1-015(D) may have permitted supplementation, but cannot be read to require it to avoid waiver). The case that the Village relies upon for its arguments is distinguishable because it involved an amended pleading, not a supplemental pleading. See Apodaca v. AAA Gas Co., 2003-NMCA-085, ¶¶ 83-85, 134 N.M. 77, 73 P.3d 215 (rejecting the plaintiffs' argument that they were denied a full and fair opportunity to litigate their claims and holding that where there was no abuse of discretion in the trial court's denial of an untimely amendment under Rule 1-015, the plaintiff cannot avoid the preclusive effect of the trial court's ruling on a subsequent action). The case at hand involves a supplemental pleading alleging facts arising after the original pleading was filed, whereas an amended pleading includes facts that occurred before. See Elec. Supply Co., 79 N.M. at 725, 449 P.2d at 327. However, the subject matter of Count IV was pled in Case II and is based on different Village officials and different actions. We hold that Count IV should not be precluded, and reverse the district court's dismissal of this count.

4. Exceptions to the General Rule on Claim Splitting Do Not Apply
{32} Plaintiffs also assert that the Village's arguments fail to consider Restatement (Second) of Judgments § 26(1)(a) (1982), which provides exceptions to the general rule on claim splitting. Section 26(1)(a) provides, in relevant part:
(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein[.]
Restatement (Second) of Judgments § 26 cmt. a states in pertinent part:
Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.
{33} Plaintiffs' argument is that the Village consented to the splitting of claims by failing to inform the court at the hearing on the second motion to dismiss Case I that Case II was pending or that collateral estoppel and res judicata might bar Case II. We disagree. The Village asserted the affirmative defense that the claims asserted in Case II were barred by collateral estoppel and res judicata. It filed a motion for a protective order and motion to stay discovery in Case II, stating its intention to file a motion for summary judgment in Case II asserting the claims were barred by collateral estoppel and res judicata. The Village then filed its motion arguing that Plaintiffs were barred by the order dismissing Case I with prejudice. Although Plaintiffs argue that the Village's motion for protective order and subsequent summary judgment motion did not constitute an objection to claim splitting because they were filed after Case I was dismissed, the Village raised the affirmative defenses of collateral estoppel and res judicata in its answer, which was filed while both cases were pending. The Village's acts were sufficient to bring to the attention of the district court and Plaintiffs that the Village objected to claim splitting.
{34} In addition, the cases relied upon by Plaintiffs are distinguishable. See, e.g., Klipsch, Inc. v. WWR Tech., Inc., 127 F.3d 729, 734 (8th Cir. 1997) (describing how the defendants did not object in any way to the plaintiffs' maintenance of two suits until after judgment had been entered in first suit). Also, in Gilles v. Ware, 615 A.2d 533, 536, 546 (D.C. 1992), the only objection to claim splitting was in the form of a motion to stay state court proceedings pending resolution of the federal court proceeding. The court determined that the defendants failed to clearly register their objection to the claim splitting. Id. at 547. Furthermore, in Funkhouser v. Hurricane Fence Co., 524 S.W.2d 780, 783 (Tex. Civ. App. 1975), the court concluded that the defendant consented to claim splitting by failing in any way to bring its objection to the attention of the trial court. Thus, raising the affirmative defense of res judicata in the Village's answer to the complaint in Case II was sufficient to make known its objection to Plaintiffs' attempt to maintain two actions on parts of the same claim.
{35} In addition, Plaintiffs argue that Restatement(Second) of Judgments § 26(1)(c) also applies. It states:
(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief[.]
Plaintiffs argue that Section 26(1)(c) of the Restatement (Second) of Judgments authorizes the court to allow Case II to proceed on the ground that at the time that they filed the complaint in Case I, the issue as to whether the Village breached the Agreement and Amendment was premature. They further contend that because performance under the Agreement and Amendment was not yet due when they filed Case I, it was reasonable to assert the claims in Case II after the date of performance passed. Restatement (Second) of Judgments § 26(1)(c) indicates that the exception applies to situations where formal barriers prevented the plaintiff from fully presenting its claim in the first action, such as jurisdictional or procedural barriers. Id. cmt. c. However, as discussed above, Plaintiffs did not have to wait for the performance date to mature before seeking damages for total breach of contract. Therefore, this exception is inapplicable to the case before us.
{36} Plaintiffs further contend that the exception stated in Section 26(1)(e) of the Restatement (Second) of Judgments applies because it allows a second action to be maintained based on a continuing wrong. Plaintiffs assert that when the Village actually failed to perform as promised under the Agreement and Amendment, it continued the "anticipatory breach" envisioned in the complaint filed in Case I. Restatement (Second) of Judgments § 26(1)(e) states:
(e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course[.]
The comment to Section 26(1)(e), provides in pertinent part: "A judgment in an action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of failure to render performance due after commencement of the first action." Id. cmt. g. However, the comment further states:
[I]f the initial breach is accompanied or followed by a `repudiation' . . . and the plaintiff thereafter commences an action for damages, he is obliged in order to avoid `splitting,' to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract.
Id. (citation omitted). Here, the Village repudiated the contract in May 1999 when it indicated it would not provide the services promised under the Agreement and Amendment. Therefore, Plaintiffs were obligated to claim all the damages arising from the contract, past and prospective, when they filed the complaint in Case I. See Gilmore, 1998-NMCA-086, ¶ 15. For this reason, this exception is also inapplicable.
{37} Finally, Plaintiffs argue that the exception stated in Section 26(1)(f) of the Restatement (Second) of Judgments provides the policy basis for concluding that the district court erred in dismissing Case II on grounds of res judicata. Section 26(1)(f) states:
(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.
The comment to Section 26(1)(f) indicates that this section applies to extraordinary circumstances where other significant policies outweigh barring the claim. Id. cmt. i. However, this exception "is not lightly to be found but must be based on a clear and convincing showing of need." Id. Some examples provided in the comment include when personal liberty is at stake, and cases involving civil commitment of the mentally ill or child custody. Id. Plaintiffs have not met their burden of establishing a clear and convincing showing of need. Nor do the circumstances in this case present an extraordinary situation. For these reasons, Section 26(1)(f) of the Restatement (Second) of Judgments is inapplicable.

Related Motions
{38} Plaintiffs filed a motion to supplement the record proper, which was held in abeyance pending submission to a panel for a decision. The parties dispute the conversations between their counsel about the entry of appearance of Plaintiffs' new counsel, and Plaintiffs have filed a motion to supplement the record by submitting affidavits concerning the succession of their counsel.[6] We deny the motion to supplement the record.

CONCLUSION
{39} Since the Village met its burden of showing that res judicata barred Plaintiffs' Case II, Counts I to III, we affirm the district court's dismissal of those counts. As Plaintiffs' Count IV involved a different set of facts than found in Plaintiffs' Case I, we reverse the district court's decision that res judicata barred Count IV of Plaintiffs' complaint in Case II. Finally, we hold that the exceptions to the claim-splitting rule do not apply to this case.
{40} IT IS SO ORDERED.
 ________________________________
 RODERICK T. KENNEDY, Judge
WE CONCUR:
__________________________________
JAMES J. WECHSLER, Judge
__________________________________
CELIA FOY CASTILLO, Judge
NOTES
[1] Each of Plaintiffs' cases named the Village and a number of its officials. Even though each of the complaints named different Village officials in their individual capacities, Plaintiffs do not raise their identities as an issue. For this reason only, we refer to all of the defendants collectively as the Village.
[2] The Case I complaint had named as a defendant then-mayor Barbara Cottam. The Case II complaint asserts its claims against Clanton as her "successor." The Case II claims against Lusk also designate Lusk as a "successor" to the former administrator, who was not, however, named in Case I.
[3] The district court's order and the parties' pleadings indicate it was a motion for summary judgment that was at issue.
[4] Former Rule 1-041(E)(1) stated:

"In any civil action or proceeding pending in any district court in this state, . . . when it shall be made to appear to the court that the plaintiff therein or any defendant filing a cross-complaint therein has failed to take any action to bring such action or proceeding to its final determination for a period of at least three (3) years after the filing of said action or proceeding or of such cross-complaint unless a written stipulation signed by all parties to said action or proceeding has been filed suspending or postponing final action therein beyond three (3) years, any party to such action or proceeding may have the same dismissed with prejudice to the prosecution of any other or further action or proceeding based on the same cause of action set up in the complaint or cross-complaint by filing in such pending action or proceeding a written motion moving the dismissal thereof with prejudice."
[5] "Successive actions changing the theory or ground. Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred."
[6] The parties argue over whether Plaintiffs' counsel was aware of the Village's second motion to dismiss at the time counsel for Plaintiffs filed the complaint in Case II. This argument is immaterial to the analysis of the issues, but for the panel's information, Plaintiffs claim that the Village served the second motion to dismiss only on their former counsel, who was still counsel of record, despite Plaintiffs' knowledge that new counsel would be appearing in Case I. It does not seem improper to serve pleadings only on counsel of record, if Plaintiffs' new counsel had not yet entered a formal appearance on their behalf with the district court.